AF Approval _____          Chief Approval _____

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                         CASE NO. 8:18-cr-517-T-35AEP

JAMES THOMAS LANG, III

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Maria Chapa Lopez, United States Attorney for the Middle District of Florida, and the defendant, James Thomas Lang, III, and the attorney for the defendant, Charles M. Britt, III, mutually agree as follows:

**A.**     **Particularized Terms**

    1.     <u>Count(s) Pleading To</u>

The defendant shall enter a plea of guilty to Count One of the indictment. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute a controlled substance, which violation involved 100 grams or more of a mixture and substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

Defendant's Initials _J.L_

2.    <u>Minimum and Maximum Penalties</u>

Count One is punishable by a mandatory minimum term of ten years imprisonment and a maximum of life imprisonment, a fine of $8,000,000, a term of supervised release of at least eight years and a special assessment of $100. The defendant is subject to these penalties pursuant to 21 U.S.C. § 851.

3.    <u>Alleyne v. United States and Apprendi v. New Jersey</u>

Under *Alleyne v. United States*, 570 U.S. 99 (2013), the defendant is subject to a mandatory minimum sentence of ten years of imprisonment as to Count One, and under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a maximum sentence of life imprisonment may be imposed as to Count One, because the defendant has admitted the following facts, and they are therefore established by this plea of guilty: The defendant conspired to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin or 40 grams or more of a mixture and substance containing a detectable amount of fentanyl.

4.    <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

Defendant's Initials  J. L.                    2

First:      Two or more people in some way agreed to try to accomplish a shared and unlawful plan,

Second:    The Defendant knew the unlawful purpose of the plan and willfully joined in it, and

Third:     The object of the unlawful plan was to distribute, or possess with the intent to distribute, 100 grams or more of a mixture and substance containing a detectable amount of heroin or 40 grams or more of a mixture and substance containing a detectable amount of fentanyl.

5.    <u>Counts Dismissed</u>

At the time of sentencing, the remaining count(s) against the defendant, Counts Three, Four, Five, Six and Seven, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the

United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the

Defendant's Initials _JL_                4

defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the

Defendant's Initials  J.L                    5

imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

     10.   Cooperation - Responsibilities of Parties

     a.    The government will make known to the Court and other

relevant authorities the nature and extent of defendant's cooperation and any

other mitigating circumstances indicative of the defendant's rehabilitative

intent by assuming the fundamental civic duty of reporting crime.  However,

the defendant understands that the government can make no representation

that the Court will impose a lesser sentence solely on account of, or in

consideration of, such cooperation.

Defendant's Initials  J.L.       6

b.      It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)      The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)      The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and

further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the

Defendant's Initials  ͻ.L          8

instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the $19,350 in proceeds the defendant admits he obtained, as the result of the commission of the offense to which the defendant is pleading guilty.  The defendant acknowledges and agrees that:  (1) the defendant obtained this amount as a

Defendant's Initials _____        9

result of the commission of the offense, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s).  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and

USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this

Defendant's Initials ___J.L.___          12

agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials ___J.L___                    13

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to

Defendant's Initials _____          14

comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court.  The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

      6.    <u>Sentencing Recommendations</u>

      It is understood by the parties that the Court is neither a party to

nor bound by this agreement.  The Court may accept or reject the agreement,

or defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office.  The defendant

understands and acknowledges that, although the parties are permitted to

make recommendations and present arguments to the Court, the sentence will

be determined solely by the Court, with the assistance of the United States

Probation Office.  Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw

defendant's plea pursuant to this plea agreement.  The government expressly

reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

      8.   <u>Middle District of Florida Agreement</u>

      It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and

Defendant's Initials  J.L          17

cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the

Defendant's Initials ____   18

right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.   <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials ⟍‧∟             19

FACTS

Beginning on an unknown date, but not later than on or about January 23, 2018, and continuing through the date of the indictment, in the Middle District of Florida, James Thomas Lang III did knowingly, willfully, and intentionally conspire with other persons to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing heroin and fentanyl.

On January 10, 2018, a confidential informant ("CI") working with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), provided information regarding a heroin dealer known as "AJ," later identified as the co-defendant, Arnold Gerard Nelson Jr. Under ATF supervision, CI communicated with Nelson to arrange for purchases of heroin.

On April 5, 2018, Nelson and CI agreed to meet at a residence in New Port Richey for Nelson to sell two ounces of heroin to CI and an undercover ATF agent (UC). Later that day, CI, UC, Nelson and the defendant, James Thomas Lang III, met at the residence. Nelson, UC and Lang sat at the kitchen table, and Nelson handed CI a brown paper bag. Inside the paper bag was a plastic bag containing a powdery substance. Subsequent laboratory analysis determined that the substance contained fentanyl and heroin, and the net weight of the substance was 55.91 grams. CI handed the

Defendant's Initials ⏵�age L        20

paper bag to UC, and UC paid Nelson $5,600 in OAF. The transaction was audio and video recorded.

On April 19, 2018, CI arranged to purchase two ounces of heroin from Nelson. Nelson, Lang and another associate met UC and CI at the same location in New Port Richey. Nelson sat at the kitchen table inside the residence and removed a paper bag from his pocket. From inside the paper bag, Nelson removed a plastic bag and placed it on a scale. The plastic bag contained a powdery substance. Subsequent laboratory analysis determined that the substance contained fentanyl and heroin, and the net weight of the substance was 56.9 grams. UC paid Nelson $5,600 in OAF and took the plastic bag containing the fentanyl and heroin. Nelson and Lang discussed possible future narcotics transactions with UC and CI, and offered to sell them ecstasy (MDMA) tablets for $3.50 each. The transaction was audio and video recorded.

On May 10, 2018, CI arranged to purchase two ounces of heroin from Nelson. Nelson also agreed to sell ecstasy tablets to CI and UC. Nelson and Lang met CI and UC at the same residence in New Port Richey as the previous transactions. Nelson handed UC a plastic bag containing 96 suspected ecstasy tablets, and another plastic bag containing a powdery substance. Subsequent laboratory analysis determined that the powdery

Defendant's Initials  ⟩L          21

substance contained heroin, with a net weight of 57.29 grams, and the

suspected ecstasy tablets contained methamphetamine, with a net weight of

23.08 grams. UC paid Nelson $5,600 in OAF for the heroin, and $350 in OAF

for the tablets. The transaction was audio and video recorded.

On June 14, 2018, CI arranged to purchase two ounces of heroin

from Nelson. They agreed to meet at a restaurant in Tampa. Nelson and Lang

arrived, entered the restaurant and sat at a table with CI and UC.

Approximately 30 minutes later, they all exited the restaurant and entered the

UC vehicle. UC sat in the driver's seat, and Nelson sat in the front passenger

seat. Nelson provided UC two baggies containing a powdery substance.

Nelson said that one baggie was "short," so there was a second baggie.

Subsequent laboratory analysis determined that the substance in one baggie

contained heroin, with a net weight of 54.6 grams, and the substance in the

second baggie contained heroin, with a net weight of 4.5 grams. UC paid

Nelson $5,600 in OAF, and they discussed future ecstasy tablet purchases.

Nelson said he could get them and deliver the ecstasy to UC and CI.

After the transaction on June 14, 2018, James Lang continued to

communicate with UC and CI about possible narcotics and firearms sales. On

July 12, 2018, CI arranged for UC to purchase two ounces of heroin and

ecstasy tablets from Lang at the same residence in New Port Richey used for

previous transactions. Lang met UC at the residence later that day. Lang handed UC a plastic bag containing a powdery substance, and a bag containing 198 suspected ecstasy tablets. Subsequent laboratory analysis determined that the powdery substance contained heroin, with a net weight of 55.3 grams, and the suspected ecstasy tablets contained methamphetamine, with a net weight of 51.9 grams. UC paid Lang $6,300 in OAF. UC and Lang discussed Lang selling UC firearms in the future. The transaction was audio and video recorded.

On October 11, 2018, Lang met with UC at Lang's apartment in Tampa. During this meeting, Lang possessed a semi-automatic firearm. UC offered to buy the firearm, but Lang said it was his personal firearm and he liked it for protection. He said that if he were to sell the firearm in the future, he would sell it to UC. Lang handed UC a blue container. Inside the container were plastic bags with suspected heroin and suspected ecstasy tablets. UC paid Lang $6300 in OAF—$5600 for the suspected heroin, and $700 for the suspected ecstasy tablets.

On October 17, 2018, UC and Lang met at Lang's residence for UC to purchase firearms from Lang. During the firearm transaction, Lang and UC discussed a future heroin transaction. The meeting was audio and video recorded.

Defendant's Initials   J. L.          23

On November 1, 2018, Lang and UC met at Lang's residence in Tampa, and Lang sold UC suspected heroin and suspected ecstasy tablets for $6,400. Lang and UC then discussed a future heroin transaction. The meeting was audio and video recorded.

On November 14, 2018, a Federal search warrant was executed at Lang's apartment in Tampa. Inside the defendant's apartment, agents recovered a plastic baggie containing suspected heroin, approximately 200 suspected ecstasy tablets, three bags of suspected marijuana, and seven cell phones. Agents also recovered drug paraphernalia, including a pill press and two pill grinders.

During the course of the conspiracy, the Defendant admits that he personally received $19,350 from the distribution of controlled substances.

The above is merely a brief summary of the events, some of the persons involved, and other information relating to this case.  It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been

made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

      The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

      DATED this 20th day of March, 2019.

                                           MARIA CHAPA LOPEZ
                                           United States Attorney

JAMES THOMAS LANG, III
Defendant

                                           MICHAEL C. SINACORE
                                           Assistant United States Attorney

CHARLES M. BRITT, III
Attorney for Defendant

                                           CHRISTOPHER F. MURRAY
                                           Assistant United States Attorney
                                         Chief, Violent Crimes and
                                         Narcotics Section